IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| TAWANNA M. L., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23cv0521 (TSE/JFA) |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned magistrate judge for a report and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.  (Docket nos. 11,

15).  Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's

claim for Supplemental Security Income ("SSI") under the Social Security Act.  The

Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ")

and Appeals Council for the Office of Appellate Operations ("Appeals Council") that plaintiff

was not disabled as defined by the Social Security Act and applicable regulations.[1]

---

[1] The Administrative Record ("AR") in this case has been filed under seal, pursuant to
Local Civil Rule 7(C).  (Docket no. 8).  In accordance with those rules, this report and
recommendation excludes any personal identifiers such as plaintiff's social security number and
date of birth (except for the year of birth), and the discussion of plaintiff's medical information is
limited to the extent necessary to analyze the case.

1

# I. PROCEDURAL BACKGROUND

## i. Plaintiff's Previous Application for Supplemental Security Income

Plaintiff first applied for SSI on March 31, 2015, with an alleged onset date of August 1, 2011. (AR 11, 76). On February 5, 2019, her claim was denied by ALJ M. Krasnow finding that she was not disabled at any point through the date of that decision. (AR 11, 73–91). Plaintiff did not appeal that decision. (AR 11).

## ii. Plaintiff's Current Application for Supplemental Security Income

On July 17, 2020, plaintiff applied for SSI with an alleged onset date of January 1, 2017. (AR 244–53).[2] The Social Security Administration ("SSA") initially denied plaintiff's application on January 12, 2021. (AR 135). On January 28, 2021, plaintiff appointed Mathis & Mathis as her representative with the SSA. (AR 143–47). Plaintiff submitted a request for reconsideration of the denial on February 23, 2021. (AR 148). On September 16, 2021, the SSA found that the original decision was proper under the law. (AR 149–51). On September 24, 2021, plaintiff filed a request for a hearing before an ALJ. (AR 152).

On March 16, 2022, a telephonic hearing before ALJ Richard Furcolo was scheduled, but was rescheduled to accommodate a request for a video hearing submitted by plaintiff. (AR 68–72). On July 5, 2022, a video hearing before ALJ Furcolo was held.[3] (AR 40–67). Plaintiff appeared with Andrew Mathis as her representative. (AR 42). Plaintiff provided testimony and answered questions posed by the ALJ and her representative. (AR 47–58). Diana Sims, a

---

[2] The application summary (AR 244–53) indicates she applied on July 24, 2020, but the ALJ's decision and other associated documents indicates the application was filed on July 17, 2020. (AR 10, 98, 124).

[3] There was confusion as to whether plaintiff received the link to access the video hearing, since she could not access it, she appeared by telephone for the video hearing. (AR 43).

vocational expert, also answered questions from the ALJ and plaintiff's representative. (AR 42, 59–66). On August 10, 2022, the ALJ issued a decision finding that plaintiff was not disabled under the Social Security Act since the date of the prior decision. (AR 7–29).[4]

On August 15, 2022, plaintiff sent a request for review of the ALJ's decision to the Appeals Council. (AR 239–41). On February 21, 2023, the Appeals Council denied plaintiff's request for review, finding no reason under the rules to review the ALJ's decision. (AR 1–5). As a result, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff was given sixty days to file a civil action challenging the decision. (AR 2); *see* 20 C.F.R. §§ 404.981, 416.1481.

On April 18, 2023, plaintiff filed this civil action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Docket no. 1). Plaintiff filed a motion for summary judgment with a memorandum in support on October 13, 2023. (Docket nos. 11, 12). On November 6, 2023, the Commissioner filed a motion for summary judgment and a memorandum in support. (Docket nos. 15, 16). On that same day, the Commissioner also filed a memorandum in opposition to plaintiff's motion that is identical to the memorandum in support of the Commissioner's motion. (Docket no. 14). Plaintiff filed a reply on November 20, 2023. (Docket no. 18). On December 14, 2023, the District Judge entered an order referring this case to the undersigned for a report and recommendation. (Docket no. 19). Accordingly, this case is now before the undersigned for a report and recommendation on the parties' cross-motions for summary judgment. (Docket nos. 11, 15).

---

[4] Due to plaintiff's first application for SSI, ALJ Furcolo explained that "[t]he undersigned finds that the issue of disability from January 1, 2017, through February 5, 2019, the date of the prior final decision, has been fully addressed and the doctrine of *res judicata* applies. . . In this [d]ecision, the undersigned will address the issue of disability beginning February 6, 2019, the day after the issuance of the prior [d]ecision." (AR 11).

## II. STANDARD OF REVIEW

Under the Social Security Act, the district court will affirm the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (internal quotations and citations omitted). In determining whether a decision is supported by substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). It is the ALJ's duty, and not that of the reviewing court, to resolve evidentiary conflicts, and the ALJ's decision must be sustained if supported by substantial evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ must adequately explain his decision and provide an accurate and logical bridge from the evidence to the conclusions. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020).

## III. FACTUAL BACKGROUND

### A.   Plaintiff's Age, Education, and Employment History

Plaintiff was born in 1987 and has a high school diploma. (AR 58, 244, 283). In 2004, plaintiff worked in food service for the retirement community Green Springs Village. (AR 299). Later, in 2006, plaintiff worked for UPS Mail Service. (AR 297). From 2007 to 2008, plaintiff

4

worked as an in-store employee at Papa John's Pizza. (AR 296). Lastly, from 2008 to 2009, plaintiff worked as a laborer for Ace Construction Company. (AR 298).[5]

**B.    Overview of Plaintiff's Medical History and Treatment**

The Administrative Record in this case is over 4,000 pages and includes more than 3000 pages of medical records and reports concerning plaintiff's physical, mental, and substance abuse issues. (Docket no. 8). Given that the issue presented in plaintiff's motion for summary judgment focuses on the legal issue concerning the ALJ's evaluation of the results of a consultative examination of plaintiff, a detailed review of her extensive medical history and treatment is not required.

*i.  Consultative Examination*

As part of the SSI application process Abraham Asmamaw, M.D., performed a consultative examination of plaintiff on December 22, 2020. (AR 1594–1600). Dr. Asmamaw noted that plaintiff presented with "unreliable presentation" and that she was a poor historian in addition to being uncooperative with his instruction. (AR 1594). At the time of the examination, plaintiff was five feet, five inches tall, weighed 306 pounds and reported that she lived in an apartment, admitted to smoking a pack a day for many years, and that she has a history of substance abuse. (AR 1595). Dr. Asmamaw noted that plaintiff had complaints of left knee pain, left hip pain, gait difficulty, and difficulty with activities of daily living. (AR 1594). Dr. Asmamaw concluded that a diagnosis of HIV disorder, bipolar disorder, and bilateral knee pain with gait disorder was supported by examination findings, but that plaintiff's history and exam was compromised by her uncooperativeness. (AR 1596–97).

---

[5] There are two work history reports, one dated July 24, 2020 (AR 272–80), and the other dated August 9, 2020 (AR 295–304). The more recently dated report was relied upon.

Dr. Asmamaw also provided a functional assessment and medical source statement, which noted that plaintiff was not fully cooperative, but that found plaintiff could sit six to eight hours with regular rest in an eight-hour workday; plaintiff could stand in an eight-hour workday with a standard cane for thirty to forty minutes for a total of two to four hours with regular rest; plaintiff could walk fifteen to thirty minute intervals with a standard cane for a total of one to two hours with regular rest; and plaintiff could lift and carry five to ten pounds occasionally. (AR 1597). Concerning manipulative limitations, Dr. Asmamaw found that plaintiff could reach, grasp, handle, feel, and finger frequently. (AR 1597). Concerning postural limitations, Dr. Asmamaw found that plaintiff could bend occasionally but could not stoop and crawl at any capacity. (AR 1597). Dr. Asmamaw recommended a quad cane or standard cane for plaintiff. (AR 1597). Finally, in assessing plaintiff, Dr. Asmamaw found normal range of motion across all tests. (AR 1598–99).

### ii. State Agency Assessments

Plaintiff's medical records were also evaluated by a state agency physician and psychologist at the initial level. (AR 100–23). In doing so, they considered plaintiff's "medical and other information, [her] age and education in determining how [her] condition affects [her] ability to work." (AR 123). Plaintiff claimed impairment due to bipolar disorder-unspecified, depression disorder, and two torn ACL's. (AR 101).

On October 22, 2020, plaintiff's claim for SSI was evaluated by a state agency psychologist, Richard Luck, Ph.D., at the initial level. (AR 100–23). Concerning plaintiff's mental health, Dr. Luck found that plaintiff had a medically determinable impairment through depressive, bipolar, and related disorders but that they did not meet the "C Criteria" listing. (AR 111). Dr. Luck also conducted a mental residual functional capacity assessment. (AR 116–20). Dr. Luck found that plaintiff does have understanding and memory limitations and noted that she

6

could only understand, retain, and follow simple job instructions, specifically performing one and two step tasks. (AR 116–17). Concerning her concentration and persistence limitations, he found that plaintiff was not significantly limited in several instances[6] but found that plaintiff was moderately limited in completing a workday and workweek without interruptions from her psychological symptoms and performing at a consistent pace. (AR 118). Due to this, Dr. Luck noted that plaintiff would only be able to maintain attention and concentration for two hours at a time as required for the performance of simple tasks at a non-rapid pace. (AR 118).

Concerning plaintiff's social interaction limitations, Dr. Luck found that plaintiff was moderately limited in interacting appropriately with the general public but that even with her social isolation/withdrawal, she could relate appropriately and appeared reasonably capable of adapting to routine interpersonal demands. (AR 118–19). He noted that her contact with the general public should be minimized. (AR 119). Concerning her adaptation limitations, Dr. Luck found that plaintiff was not significantly limited other than she could adapt to routine work demands associated with only simple tasks. (AR 119–20). In addition to his mental health residual functional capacity assessment, Dr. Luck noted that plaintiff had a significant history of mental health treatment and that since restarting her medications and treatment she had been compliant in taking them. (AR 120). Dr. Luck also noted that the evidence in her record showed plaintiff was alert, that her thought pattern was linear, logical, and goal directed. (AR 120).

---

[6] Dr. Luck found that plaintiff was not significantly limited in: the ability to carry out very short and simple instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others without be distracted by them; and the ability to make simple work-related decisions. (AR 117–18).

On January 11, 2021, plaintiff's claim for SSI was also evaluated by a state agency physician, Bert Spetzler, M.D., at the initial level. (AR 100–23). In reviewing the medical records for a physical residual functional capacity assessment, Dr. Spetzler found that plaintiff had exertional limitations including that she could occasionally lift and/or carry only twenty pounds and frequently only ten pounds; stand and/or walk for only a total of two hours; that a hand-held assistive device was necessary for ambulation; that she could sit for a total of six hours in an eight-hour workday; and that she was limited in pushing and/or pulling in her lower extremities. (AR 114). Dr. Spetzler further found that plaintiff had postural limitations including that she could occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; balance and stoop frequently; and occasionally kneel, crouch, and crawl. (AR 115). Dr. Spetzler found that plaintiff had no manipulative, visual, communicative, or environmental limitations. (AR 115–16). Dr. Spetzler noted that plaintiff had decreased motor strength of the bilateral lower extremities and osteoarthritis of the left knee, non-pitting edema, that she was HIV positive but asymptomatic, had a BMI over 55, and had a diagnosis of hypertension. (AR 116). Dr. Spetzler concluded that plaintiff was limited to sedentary, unskilled work. (AR 121–22). The conclusions reached by Dr. Luck and Dr. Spetzler resulted in a finding by the SSA of not disabled at the initial level. (AR 122).

At the reconsideration level on July 15, 2021, Howard Leizer, Ph.D., conducted a psychiatric review and mental residual function capacity assessment. (AR 129–30, 132–33). Dr. Leizer noted that despite her combinations of mental impairments and related symptoms, she remained capable of understanding, remembering, and carrying out simple repetitive tasks with limited social interaction. (AR 129, 132, 133). Concerning plaintiff's mental residual functional capacity assessment, Dr. Leizer found no understanding and memory limitations and no

8

adaptation limitations. (AR 132, 133). Concerning concentration and persistence limitations,

Dr. Leizer found that plaintiff was moderately limited in her ability to carry out detailed

instructions; her ability to maintain attention and concentration for extended periods of time; her

ability to work in coordination with or in proximity to others without being distracted by them;

and her ability to complete a normal workday and workweek without interruptions from

psychological symptoms and to perform at a consistent pace without an unreasonable number

and length of rest periods. (AR 132). Concerning social limitations, Dr. Leizer found that

plaintiff was moderately limited in her ability to interact appropriately with the general public;

her ability to accept instructions and respond appropriately to criticism from supervisors; and her

ability to get along with coworkers or peers without distracting them or exhibiting behavioral

extremes. (AR 133). After conducting his review of the records, Dr. Leizer found that despite

plaintiff's combination of mental impairments and related symptoms, she remains capable of

understanding, remembering, and carrying out simple repetitive tasks with limited social

interaction. (AR 129, 133).

At the reconsideration level on September 15, 2021, Richard Surrusco, M.D., also

conducted a residual functional capacity assessment. (AR 130–32). Dr. Surrusco found that

plaintiff had no manipulative limitations, no visual limitations, and no communicative

limitations. (AR 131). Concerning exertional limitations, Dr. Surrusco found plaintiff could

occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; had unlimited

ability to push and pull in her upper extremities (other than lift and/or carry) and a limited ability

to push and pull in her lower extremities; and could stand and walk for a total of two hours with

normal breaks and sit for a total of about six hours in an eight-hour workday. (AR 131). Given

the various issues with her knees and legs, Dr. Surrusco indicated that plaintiff could only

9

push/pull with her lower extremities occasionally. (AR 131). He noted that the consultative

examiner opined a need for a single point cane for ambulation. (AR 131). Concerning postural

limitations, Dr. Surrusco found that plaintiff could occasionally climb ramps or stairs; never

climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch; and never crawl.

(AR 131). Concerning environmental limitations, Dr. Surrusco found that plaintiff should avoid

concentrated exposure to extreme hot, humidity, vibration, fumes, odors, dusts, gases, poor

ventilation, and hazards. (AR 131). Overall, Dr. Surrusco concluded that the findings of the

initial decision remained consistent with the totality of the evidence when assessing plaintiff's

physical health. (AR 132). Based on these findings, the SSA again determined that plaintiff was

limited to unskilled, sedentary work but given her age and education, she was not disabled. (AR

134–35).

### C.    The ALJ's Decision on August 10, 2022

The ALJ ultimately concluded that plaintiff was not disabled under section 1614(a)(3)(A)

of the Social Security Act based on her application for SSI filed on July 17, 2020, at any time

from the date of the prior decision on February 5, 2019. (AR 29). When determining whether an

individual is eligible for SSI, the ALJ is required to follow a five-step sequential evaluation. *See*

20 C.F.R. § 416.920(a). In this case the ALJ recognized there was medical evidence of a

substance use disorder and therefore he was required to consider whether it is a contributing

factor material to the disability determination. (AR 11). The ALJ initially concluded that based

on the evidence in the Administrative Record plaintiff is under a disability, but that her substance

use disorder was a contributing factor material to the determination of disability. (AR 12). After

taking into consideration the impact of the substance use disorder, the ALJ decided that plaintiff

was not disabled from the date of the prior decision through the date of his decision. (AR 12). It

10

is this process that the court examines to determine whether the correct legal standards were applied and whether the ALJ's final decision is supported by substantial evidence. *See id.*

The ALJ must consider whether a claimant: (1) is currently engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals any of the impairments listed in Appendix 1, Subpart P of the regulations that are considered *per se* disabling; (4) has the ability to perform past relevant work; and (5) if unable to return to past relevant work, whether the claimant can perform other work that exists in significant numbers in the national economy. *See id.* The claimant bears the burden to prove disability for the first four steps of the analysis. *See McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The burden then shifts to the Commissioner at step five. *See id.* The regulations promulgated by the Social Security Administration provide that all relevant evidence will be considered in determining whether a claimant has a disability. *See* 20 C.F.R. § 416.920(a)(3).

Here, the ALJ made the following findings of fact and conclusions of law based on plaintiff stopping the substance use:[7]

> (1) The claimant has not engaged in substantial gainful activity since February 6, 2019, the day after the prior decision. (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> (2) The claimant has the following severe impairments: depressive disorder, substance abuse disorder, obesity, osteoarthritis and ACL tears of both knees; rib fractures, an acetabular fracture, degenerative disc disease of the cervical and lumbar spine (20 CFR 416.920(c)).
>
> (3) If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work

---

[7] The ALJ made findings and conclusions that included limitations relating to plaintiff's substance use disorder and findings and conclusions that he believed would exist if plaintiff stopped the substance use. The primary difference relates to the inclusion in the residual functional capacity finding that considering her substance use plaintiff would be expected to experience two or more unexcused absences every month on a consistent basis and/or will be off task more that 20 percent of each workday. (AR 16, 22).

activities; therefore, the claimant would have a severe impairment or combination of impairments (20 CFR 416.922).

(4) If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.994(b)(5)(i)).

(5) The claimant has no past relevant work (20 C.F.R. 416.965).

(6) The claimant is a younger individual age 18-44 (20 CFR 416.963).

(7) The claimant has at least a high school education (20 C.F.R. 416.964).

(8) Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 C.F.R. 416.968).

(9) After careful consideration of the entire record, the undersigned finds that, if the claimant stopped the substance use, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: requires the ability to change positions from sitting to standing every 10-15 mins or at-will; occasionally operate foot controls bilaterally; frequently balance; occasionally climb stairs; occasionally stoop, kneel, and crouch; should never crawl or climb ladders; should avoid concentrated exposure to hazards, extreme heat, humidity, vibration, and pulmonary irritants; able to perform simple routine and repetitive tasks but not at a production rate pace; able to interact with supervisors, co-workers, and the public on an occasional basis.

(10) The claimant has no past relevant work (20 CFR 416.965).

(11) Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).

(12) If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 426.960(c) and 416.966).

(13) The substance use is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped substance use (20 CFR 416.920(g) and 416.935). Because substance use is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this Decision.

(AR 13–28).

## IV. ANALYSIS

Plaintiff's argue in this appeal that the ALJ failed to properly evaluate Dr. Asmamaw's findings following his consultative examination of plaintiff performed on December 22, 2020. (Docket nos. 12, 18).  Plaintiff states that Dr. Asmamaw was hired by the SSA and that he was not only a medical expert, but also an expert in disability evaluation.  Dr. Asmamaw had an opportunity to review plaintiff's medical records, interview plaintiff, administer a physical examination, and observe plaintiff in person.  Following his consultative examination, Dr. Asmamaw prepared a six-page report detailing his findings.  (AR 1594).  Plaintiff acknowledges that the ALJ was not bound by Dr. Asmamaw's opinions but claims that the ALJ failed to provide an adequate explanation for omitting certain limitations in Dr. Asmamaw's report in plaintiff's residual functional capacity.  By not including several of Dr. Asmamaw's opinions in the residual functional capacity, plaintiff contends it was far less restrictive and could have altered the outcome of the disability decision.  Because the ALJ failed to explain why certain opinions were omitted and provided inadequate reasoning for the omission of other limitations, plaintiff requests that this claim be remanded to the Commissioner for further proceedings pursuant to the fourth sentence in 42 U.S.C. § 405(g).

Plaintiff recognizes that the ALJ's decision did include a discussion concerning Dr. Asmamaw's report and the ALJ did not find it to be persuasive.  However, she argues that the ALJ's discussion concerning the opinions and limitations contained in Dr. Asmamaw's report focused on her ability to sit, stand, and walk, as well as her need for an assistive device, and the ALJ ignored other significant limitations contained in the report.  Plaintiff contends that the ALJ failed to provide any analysis or explanation for excluding Dr. Asmamaw's stated limitations on plaintiff's ability to lift or carry weight on more than an occasional basis; her ability to only

frequently reach, grasp, handle, feel, and finger; and her inability to stoop.  Plaintiff asserts that

the failure to provide any explanation for omitting these limitations did not comply with the

ALJ's duty to consider the supportability and consistency factors for these medical opinions and

to provide an "accurate and logical bridge" from the evidence to his conclusion.  Given the lack

of any explanation from the ALJ concerning why these limitations were not included in the

residual functional capacity, plaintiff argues there is no way to trace the ALJ's reasoning and

determine whether an "accurate and logical bridge" exists for the ALJ's determinations

concerning those limitations.

Defendant argues that the ALJ did not ignore plaintiff's physical impairments in crafting

a residual functional capacity limiting plaintiff to sedentary work with additional non-exertional

limitations.  (Docket nos. 14, 16).  Defendant argues that the ALJ correctly and reasonably

"rejected Dr. Asmamaw's opinion wholesale" because it was "inherently inconsistent and

contradictory."  (Docket nos. 14, 16 at 10).  Defendant acknowledges the requirement that

"medical opinions" such as the report prepared by Dr. Asmamaw must be considered by the ALJ

in crafting a residual functional capacity and the persuasiveness of each such opinion is to be

assessed based on its supportability and consistency.  Defendant argues that the ALJ discussed

the supportability of Dr. Asmamaw's report in stating the it "is internally inconsistent with his

own findings" noting that plaintiff said she could not stand or walk despite being in the

examination room alone.[8]  (Docket nos. 14, 16 at 12).  While he noted that plaintiff was a poor

_____

[8] As plaintiff explained during her sworn testimony at the hearing before the ALJ on July
5, 2022, plaintiff's comment to Dr. Asmamaw that she could not stand or walk was not literal but
indicated that it hurt for her to stand or walk.  (AR 56).  Clearly Dr. Asmamaw recognized that
plaintiff could stand and walk, albeit for limited periods of time.  The results concerning her
neurologic examination including coordination, station, and gate confirm that she was able to
stand and walk.  (AR 1596).

14

historian and did not cooperate with the visual examination, Dr. Asmamaw did not provide any qualification in his report that his findings concerning plaintiff's limitations were not supported by his examination. Defendant states that Dr. Asmamaw's opinion "largely tracked" the residual functional capacity finding of sedentary work but the ALJ found the need for cane use to be overly restrictive. (Docket nos. 14, 16 at 12). Defendant then focuses on the supportability of ALJ's discussion concerning Dr. Asmamaw's opinion that plaintiff needs a cane, and the limitations on standing, walking, and sitting, citing records indicating plaintiff's gait was noted as normal at various times and she was prescribed knee braces instead of a cane by Dr. Ghauri.[9] However, other than claiming the ALJ rejected Dr. Asmamaw's opinion wholesale, defendant's opposition fails to address plaintiff's arguments that the ALJ did not provide an explanation in the decision for not adopting Dr. Asmamaw's limitations concerning carrying any weight on more than an occasional basis, limitations on the use of her upper extremities, and her inability to stoop.

A close review of the ALJ's decision, reveals that plaintiff's argument has merit. At the request of the SSA, Dr. Asmamaw examined plaintiff and prepared a report containing specific findings, including a functional assessment and medical source statement. Included in his functional assessment was a limitation concerning the amount of weight plaintiff can lift and carry only on an occasional basis; a limitation on plaintiff's ability to reach, grasp, handle, feel,

---

[9] Given the applicable standard of review, the undersigned believes that substantive evidence supports the ALJ's decision not to adopt Dr. Asmamaw's limitation that plaintiff requires a cane. While Dr. Spetzler also found that plaintiff required a hand-held device for ambulation in the initial evaluation (AR 114) and at the reconsideration stage Dr. Surrusco noted the consultative examiner opined the need for a cane and determined that the administrative findings in the initial decision remain consistent with the totality of the evidence (AR 131–32), conflicting evidence exists in the Administrative Record that was discussed in the decision by the ALJ in explaining his reasoning for not including that limitation.

15

and finger; and a limitation that plaintiff cannot stoop or crawl. (AR 1597). The residual functional capacity contained in the decision does not include a specific limitation concerning the weight plaintiff can lift and carry only on an occasional basis, it does not contain any limitation on plaintiff's ability to reach, grasp, handle, feel, and finger, and it provides that plaintiff can stoop occasionally. (AR 22). While the definition of sedentary work contains a limitation on lifting no more than 10 pounds at a time, Dr. Asmamaw specifically limited plaintiff to lifting or carrying 5-10 pounds only occasionally. The ALJ's decision mentions that Dr. Surrussico' opinion is more persuasive than Dr. Spetzler's noting that plaintiff's ability to carry 20 pounds would be difficult given her complaints of knee problems, effects of her obesity, and both knees with complete ACL tears bilaterally. (AR 27). However, it does not discuss Dr. Asmamaw's limitations that plaintiff would be limited to only occasional lifting and carrying. The manipulative limitation contained in Dr. Asmamaw's report limited plaintiff to only frequent reaching, grasping, handling, feeling, and fingering. The ALJ's residual functional capacity does not contain any limitation on plaintiff's ability to reach, grasp, handle, feel, and finger and there is no discussion in the decision supporting a finding that no such limitation is appropriate. Given the nature of the representative occupations suggested by the vocational expert (final assembler, finisher, and assembler), any limitation on the ability to reach, grasp, handle, feel, and finger could be significant. Finally, based on his examination of plaintiff, Dr. Asmamaw determined that plaintiff should never be required to stoop. Given plaintiff's degenerative disc disease of the cervical and lumbar spine, obesity, and knee limitations, a limitation of no stooping may be appropriate. While the residual functional capacity limits plaintiff to occasional stooping, there is no discussion as to why Dr. Asmamaw's restriction was not found to be appropriate.

16

An ALJ is required to conduct a function-by-function analysis of a claimant's limitations and adequately explain his decision.  Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record or where other inadequacies in the ALR's analysis frustrate meaningful review.  *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015); *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020).  As to the three items identified by plaintiff, a review of the ALJ's decision does not provide a "narrative discussion" as required by Social Security Ruling 96-8 describing how the evidence supports each conclusion concerning those limitations.  A necessary requirement to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling including a discussion of which evidence the ALJ found credible and why.  *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

Given a close review of the ALJ's decision and the portions of the Administrative Record relevant to the issues presented in the case, it appears the that ALJ failed to properly address the conflicting evidence concerning these limitations and the reasons for not including Dr. Asmamaw's restrictions in the residual functional capacity.  Accordingly, the undersigned recommends a finding that a remand of this case is appropriate pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## V.  CONCLUSION

For the reasons stated above, the undersigned magistrate judge recommends that defendant's motion for summary judgment be denied and that plaintiff's motion for summary judgment be granted in part and this case be remanded for further proceedings in accordance with the fourth sentence of 42 U.S.C. § 405(g).

## NOTICE

Failure to file written objections to this report and recommendation within 14 days after being served with a copy of this report and recommendation may result in the waiver of any right to a *de novo* review of this report and recommendation and such failure shall bar you from attacking on appeal any finding or conclusion accepted and adopted by the District Judge except upon grounds of plain error.

Entered this 16th day of January, 2024.

_____ /s/ _____
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia